## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| LOUISVILLE CITY SCHOOL DISTRICT BOARD OF EDUCATION, | ) | CASE NO. 5:19-cv-1509 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| OHIO ASSOCIATION OF PUBLIC | ) | |
| SCHOOL EMPLOYEES (OAPSE)/AFSCME | ) | |
| LOCAL 4 AFL-CIO, et al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Before the Court is the motion to dismiss filed by defendant Ohio Association of Public School Employees/AFSCME Local 4, AFL-CIO ("OAPSE"). (Doc. No. 11, motion ["Mot."].) Plaintiff, Louisville City School District Board of Education (the "School Board"), filed a response in opposition (Doc. No. 12, opposition ["Opp'n"]) and OAPSE filed a reply.[1] (Doc. No. 15, reply ["Reply"].) Also pending before the Court is the School Board's motion to deposit funds by interpleader pursuant to Fed. R. Civ. P. 22.[2] (Doc. No. 17.) OAPSE opposes that motion. (Doc. No. 18.) For the reasons stated herein, OAPSE's motion to dismiss for lack of subject matter jurisdiction is GRANTED, and the School Board's motion to interplead funds is DENIED as moot.

---

[1] OAPSE filed its original reply on October 21, 2019 (Doc. No. 13) and filed a corrected reply on October 25, 2019 (Doc. No. 15). Unless otherwise noted, the Court will refer to the corrected reply (Doc. No. 15) as, simply, the reply.

[2] In their opposition to the current motion, the School Board claims it has also "sought leave to amend its complaint…." (Opp'n at 157, all page numbers refer to the page identification number generated by the Court's electronic docketing system.) A careful review of the docket in this case indicates that the School Board has not, in fact, sought such leave.

# I.  BACKGROUND

The School Board is the body politic charged with operating the Louisville City School District (the "District"). (Doc No. 1, complaint ["Compl."] ¶ 1.) OAPSE is the union recognized by the Ohio State Employment Relations Board as the exclusive representative for certain collective-bargaining employees within the District. (*Id.* ¶ 2.) OAPSE operates within the District through its local Louisville Chapter #456. (*Id.*) In order to regulate the wages, hours, and other terms and conditions of OAPSE members' employment, the School Board and the OAPSE entered into a collective-bargaining agreement ("CBA") effective July 1, 2016 through June 30, 2019. (*Id.* ¶ 10.) The CBA prohibits bargaining-unit employees from resigning their union membership while the CBA is effective and requires the School Board to deduct dues from union members' wages and remit those deductions to the OAPSE throughout the CBA's entire term. (*Id.* ¶ 11.)

Defendants Patricia Sears ("Sears"), Debbie Lutz ("Lutz"), and Deborah Faber ("Faber") (collectively, the "Employee Defendants") are all School Board employees and OAPSE members whose employment is covered by the CBA. (*Id.* ¶¶ 3, 5, 6, 12.) On June 28, 2018—the day after the United States Supreme Court's decision in *Janus v. Am. Fed'n of State, Cty., and Mun. Emps., Council 31*, __U.S.__, 138 S. Ct. 2448, 201 L. Ed. 2d 924 (2018)[3] was released—Sears and Lutz notified the Board that they wanted to revoke their OAPSE membership and no longer wished to

---

[3] By way of background, in *Janus* the Supreme Court held that public-sector agency fees—fees deducted from nonunion members' salaries that are intended to help offset the union's expenditures related to bargaining for benefits received by both union members and nonmembers alike—are unconstitutional in violation of the First Amendment. *Janus*, 138 S. Ct. at 2486. *Janus* overruled *Abood v. Detroit Bd. of Ed.*, 431 U.S. 209, 225–26, 97 S. Ct. 1782, 52 L. Ed. 2d 261 (1977) in which the Supreme Court held that agency fees were constitutional so long as they were "used to finance expenditures by the [u]nion for the purposes of collective bargaining, contract administration, and grievance adjustment…." *Janus* makes clear that, no matter what the fees are used to finance, public-sector unions are no longer permitted to "extract agency fees from nonconsenting employees." *Janus*, 138 S. Ct. at 2486. The Supreme Court held, "[n]either an agency fee nor any other payment to the union may be deducted from a nonmember's wages … unless the employee affirmatively consents to pay. By agreeing to pay, nonmembers are waiving their First Amendment rights…." *Id.*

pay union dues. (*Id.* ¶¶ 14-16.) On July 2, 2018, Faber notified the School Board that "at the beginning of the 2018–2019 school year," she too wished to "revoke her membership." (*Id.* ¶ 17.) But OAPSE denied the Employee Defendants' revocation requests because bargaining-unit employees are prohibited from resigning their union memberships except during a specified revocation window and the Employee Defendants' requests were made outside that window. (*Id.* ¶¶ 11, 15, 16, 17, 20.)

Nevertheless, the School Board—purportedly relying on *Janus*—halted the deduction of the Employee Defendants' union dues and fees. (*Id.* ¶ 22.) In response, the OAPSE filed a grievance alleging that the School Board violated the CBA by unilaterally stopping dues deductions. (*Id.* ¶ 23.) The School Board now seeks a "declaration by this Court construing [*Janus* and its effect] on state public-sector collective-bargaining contracts and union members' ability to withdraw consent from automatic payroll deductions for dues and fees to the [u]nion or to withdraw only within a 'window'…." (*Id.* ¶¶ 28, 29.) OAPSE moved to dismiss the Board's declaratory judgment action pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). (*See* Mot.)

On January 29, 2020, the Court, pursuant to its ongoing duty to ensure there is a live controversy between the parties, issued an order to show cause directing the parties to answer several questions related to, among other things, the Employee Defendants' current relationship vis-à-vis OAPSE. (*See* Doc. No. 19, order to show cause ["Show Cause Order"].) Specifically, the Court noted that according to the complaint, the CBA at issue expired on or about June 30, 2019 (*see* Compl. ¶ 10) and, as such, the Employee Defendants were presumably afforded an opportunity to revoke their membership revocation during the designated withdrawal period. (Show Cause Order at 221–22.) If the Employee Defendants properly revoked their membership

3

during the withdrawal window, the Court reasoned, then there would be no live dispute between the Employee Defendants and the School Board or OAPSE because the Employee Defendants would no longer be paying union dues as non-OAPSE members and would not be subjected to agency fees pursuant to *Janus*.[4]

In their responses to the Court's order to show cause, the parties[5] informed the Court that the CBA with effective dates from July 1, 2016 to June 30, 2019 was extended for an additional year, from July 1, 2019 until June 30, 2020. (Doc No. 20 ["OAPSE Response"] at 226–27; Doc. No. 21 ["School Board Response"] at 312.) In addition, OAPSE clarified the membership revocation process, stating OAPSE members are permitted to revoke their membership "during a 10 day period from August 22 through August 31." (OAPSE Response at 224.) When OAPSE members execute their membership applications, they agree that "'withdrawal of dues deduction authorization shall be in writing, executed and delivered during the revocation period by written notice', and that the authorization 'may not be revoked at any other time or in any other manner except as provided herein.'" (*Id.*, quoting the OAPSE membership application.)

Due to the one-year contract extension, "OAPSE decided to honor revocations received from August 22–31 in *both* 2018 and 2019." (*Id.*, emphasis in original.) Since their untimely revocation attempts, "the Employee Defendants have had two window periods in which they could

---

[4] The parties do not dispute whether OAPSE ceased collecting agency fees from non-union members following publication of the *Janus* decision. OAPSE claims that "[i]mmediately after the *Janus* decision, [it] ceased collecting fair-share fees [aka agency fees] from non-members." (Doc. No. 20-1 at 235.)

[5] The Court notes that the Employee Defendants did not respond to the Court's order to show cause, despite an explicit directive to do so. (*See* Show Cause Order at 221–22, "[T]he *parties* are ordered to show cause…." (emphasis added).)

4

have perfected their revocations, but they did not do so."[6] (*Id.* at 227.) The parties appear to agree that the Employee Defendants' initial revocation requests fell outside the designated revocation window. (OAPSE Response at 227; School Board Response at 313–14.) While it is unclear whether the Employee Defendants are current OAPSE members—OAPSE says they are "not members in good standing" (OAPSE Response at 226), whereas the School Board does not believe they are members at all (School Board Response at 312)—the parties agree that the Employee Defendants are not currently paying any union-related dues or fees. (Compl. ¶ 22; OAPSE Response at 226; School Board Response at 312.) Nevertheless, the School Board claims it is entitled to a declaratory judgment "because *Janus* places the [School Board] at risk of a suit by [the Employee Defendants] under 42 U.S.C. § 1983 to vindicate their First Amendment … rights." (Opp'n at 153.) The Court disagrees.

## II.     STANDARD OF REVIEW

### A.  Rule 12(b)(1) Standard

Rule 12(b)(1) allows dismissal when the court lacks subject matter jurisdiction over the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(1). Rule 12(b)(1) motions can either "challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014) (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)). A facial attack "goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction, and the court takes the allegations of the complaint as true for purposes of Rule 12(b)(1) analysis." *Id.* In

---

[6] The Court notes that it appears as though two Employee Defendants, Lutz and Sears, attempted to perfect their revocation requests on August 22, 2018—during the revocation window. (*See* Doc. No. 20-1 at 269, 272.) The question of whether OAPSE rightfully denied any of the Employee Defendants' revocation requests is not before this Court and does not affect resolution of the present motion.

contrast, a factual attack "is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction." *Ritchie*, 15 F.3d at 598. If the factual basis of subject matter jurisdiction is challenged, "no presumptive truthfulness applies to the factual allegations … and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* (internal citation omitted). Plaintiff bears the burden of showing that subject matter jurisdiction exists. *Cartwright*, 751 F.3d at 760 (citation omitted).

OAPSE's motion does not specify whether it is asserting a facial or factual attack. In general, however, "[c]laims of factual defects are far more frequent than facial attacks." *Campbell v. Miller*, 835 F. Supp. 2d 458, 463 (S.D. Ohio 2011) (citing Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350 (3d ed. 2004)). And, indeed, a thorough reading of OAPSE's motion indicates its intent to assert a factual attack. OAPSE is not merely questioning the sufficiency of the School Board's pleading but asserts that the facts underlying this case do not give rise to federal jurisdiction. As such, the Court may look beyond the pleadings—including to the parties' responses to the Court's order to show cause—to ensure the existence of subject matter jurisdiction. *See LaMarca v. United States*, 34 F. Supp. 3d 796, 803 (N.D. Ohio 2014) ("[W]hen the facts underlying subject matter jurisdiction are challenged the court … may look beyond the pleadings and weigh competing evidence to determine if subject matter jurisdiction exists without converting the Rule 12(b)(1) motion to a motion for summary judgment.") (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990) (further citations omitted).

### B.  Rule 12(b)(6) Standard

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. *Gardner v. Quicken Loans, Inc.*, 567 F. App'x 362, 364 (6th Cir. 2014). The rule permits dismissal when the complaint "fail[s] to state a claim upon which relief can be granted…." Fed. R. Civ. P. 12(b)(6).

6

When ruling on such a motion, the court must construe the complaint in the light most favorable to the non-moving party and must accept all facts contained therein as true. *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998) (citation omitted). But the Court "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

The sufficiency of the complaint is tested against the pleading standard outlined in Rule 8, requiring pleadings to contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, it must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Twombly*, 550 U.S. at 556).

"When a defendant moves to dismiss a case pursuant to both Rule 12(b)(1) and (b)(6), the Court should consider the 12(b)(1) motion first because, if the Court lacks subject matter jurisdiction, the 12(b)(6) motion is moot." *Paschal v. Doctors Assocs.*, No. 4:17cv1635, 2017 WL 4155768, at *2 (N.D. Ohio Sept. 19, 2019) (citing *Kadura v. Lynch*, No. CV 14–13128, 2017 WL 914249, at *1 (E.D. Mich. Mar. 8, 2017)).

## III. DISCUSSION

In their complaint, the School Board seeks a declaratory judgment, in light of the Supreme Court's *Janus* decision, "as to whether the [Employee Defendants'] First Amendment rights supersede the relevant provisions in the CBA requiring the [School Board] to deduct [u]nion dues

7

and fees [from] employees who have revoked consent for their continued deduction…." (Compl. ¶ 32.) In other words, the School Board asks this Court to declare what effect, if any, *Janus* has on "union members' ability to withdraw consent for automatic payroll deductions for dues and fees to the [u]nion or to withdraw only within a 'window'…." (Compl. ¶ 29.) In their motion to dismiss, OAPSE challenges this Court's subject matter jurisdiction on lack of standing and ripeness grounds. The Court will begin its analysis with OAPSE's standing argument.

### A.  Subject Matter Jurisdiction and the Declaratory Judgment Act

The Declaratory Judgment Act provides federal courts with the discretion to "declare the rights and other legal relations of any interested party seeking such declaration…." 28 U.S.C. § 2201(a). But the Declaratory Judgment Act does not "create an independent basis for federal subject matter jurisdiction." *Heydon v. MediaOne of Se. Mich., Inc.*, 327 F.3d 466, 470 (6th Cir. 2003). Therefore, the School Board must establish a separate basis for federal jurisdiction before bringing a claim under the Declaratory Judgment Act. *Id.* The School Board premises federal jurisdiction on "Article III § 2 of the United States Constitution and [federal question jurisdiction pursuant to] 28 U.S.C[] § 1331." (Compl. ¶ 8.)

Article III of the Constitution limits a district court's authority to the adjudication of cases or controversies. U.S. Const. art. III, § 2. The "case or controversy" clause "also applies to declaratory judgment actions." *Am. Zurich Ins. Co. v. Cooper Tire & Rubber Co.*, 465 F. Supp. 2d 827, 831 (N.D. Ohio 2006) (citing *Detroit, Toledo & Ironton R.R. Co. v. Consol. Rail Corp.*, 767 F.2d 274, 279 (6th Cir. 1985)). Indeed, the Declaratory Judgment Act provides that a district court may declare the rights and legal relations of the parties, so long as there is an "actual controversy…." 28 U.S.C. § 2201(a). "The 'actual controversy' requirement under the Declaratory Judgment Act is coextensive with Article III's case or controversy requirement." *Hayden v. 2K*

8

*Games, Inc.*, 375 F. Supp. 3d 823, 829 (N.D. Ohio 2019) (citing *Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*, 482 F.3d 1330, 1338 (Fed. Cir. 2007)). As such, federal courts must ensure that all suits, including those seeking a declaratory judgment, satisfy the longstanding justiciability requirements of standing, ripeness, and mootness. *See Nat. Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 279-80 (6th Cir. 1997).

### B.    The School Board Lacks Standing

"Article III standing is a question of subject matter jurisdiction properly decided under Rule 12(b)(1)." *Am. BioCare Inc. v. Howard Attorneys PLLC*, 702 F. App'x 416, 419 (6th Cir. 2017) (citing *Allstate Ins. Co. v. Glob. Med. Billing, Inc.*, 520 F. App'x 409, 410–11 (6th Cir. 2013)). Article III standing requires a litigant to have (1) suffered an injury-in-fact that is (a) concrete and particularized and (b) actual or imminent, not hypothetical or conjectural, (2) that is fairly traceable to the defendant's allegedly unlawful conduct, and (3) that is likely to be redressed by the requested relief. *Fieger v. Mich. Supreme Court*, 553 F.3d 955, 962 (6th Cir. 2009) (citation omitted). When seeking declaratory relief, the plaintiff "must show actual present harm or a significant possibility of future harm in order to demonstrate the need for pre-enforcement review." *Magaw*, 132 F.3d at 279 (citing cases). The party seeking federal court jurisdiction bears the burden of establishing standing. *Rosen v. Tenn. Comm'r of Fin. & Admin.*, 288 F.3d 918, 927 (6th Cir. 2002) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561–62, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)).

The only "harm" alleged in the School Board's complaint relates to OAPSE's grievance "alleging that the [School Board] violated the CBA by stopping dues deduction[s]." (Compl. ¶ 23.) In its opposition to the present motion, however, the School Board clarifies that "the *hypothetical* impending suit that the [School Board] seeks to avoid" by bringing the present lawsuit is a potential

action brought by the Employee Defendants pursuant 42 U.S.C. § 1983. (Opp'n at 154, emphasis added.) The School Board believes that if they would have continued withholding union dues from the Employee Defendants' salaries following the Supreme Court's *Janus* decision, they risked a potential "First Amendment suit" brought by the Employee Defendants. (*Id.* at 155.) This is precisely the type of hypothetical controversy that federal courts are foreclosed from considering. *See Hillard v. First Fin. Ins. Co.*, 968 F.2d 1214 (table), 1992 WL 164998, at *2 (6th Cir. July 16, 1992) ("Stated differently, a controversy, to be justiciable, must be such that it can presently be litigated and decided and not hypothetical, conjectural, conditional or based upon the possibility of a factual situation that may never develop.") (citation and quotation marks omitted).

The injury that the School Board seeks to avoid (a potential lawsuit) is, at this point, purely conjectural. While the "difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree," *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273, 61 S. Ct. 510, 85 L. Ed. 826 (1941), the instant case is several degrees shy of a judiciable controversy. The School Board claims that it "remains locked in a situation analogous to that hypothesized in *MedImmune, Inc. v. Genentech, Inc.*[, 549 U.S. 118, 121–22, 127 S. Ct. 764, 166 L. Ed. 2d 604 (2007)]—a plaintiff seeking to avoid choosing between abandoning constitutional rights and avoiding criminal liability." (Opp'n at 156.) But the plaintiff in that case was much differently situated.

In that case, MedImmune, the party seeking a declaratory judgment, sought to challenge royalty payments due under a patent license agreement but—due to the potential harsh penalties for not performing under the contract—wanted to do so without actually breaching the agreement. But under existing Federal Circuit precedent, a patent licensee in good standing could not "establish an Article III case or controversy with regard to the patent's validity, enforceability, or

10

scope." *MedImmune*, 549 U.S. at 118. As such, MedImmune would have been forced to breach its license agreement—which would have potentially exposed it to treble damages, attorney's fees, and an injunction barring the sale of its most popular product—before it could seek a declaratory judgment. *Id.* at 121–22. "Unwilling to risk such serious consequences, [MedImmune] paid the demanded royalties" under protest. *Id.* at 122. The Supreme Court held that the suit was justiciable because the "factual and legal dimensions of the dispute [were] well defined and, but for [MedImmune's] continuing to make royalty payments, nothing about the dispute would render it unfit for judicial resolution." *Id.* at 128. The hypothesized dispute in the instant action is not nearly as well defined.

Unlike *MedImmune*, where there was an immediate contract dispute between two adverse parties, here the School Board simply thinks there may be "the possibility of [a] suit" by the Employee Defendants. (Opp'n at 155.) In *MedImmune*, the factual and legal dimensions of the suit were so well defined that the only thing rendering the case unfit for judicial resolution was MedImmune's unwillingness to "bet the farm" by breaching the agreement in hopes that their interpretation of the agreement would prove correct. *Id.* at 129, 134 ("The rule that a plaintiff must … bet the farm, or (as here) risk treble damages and the loss of 80 percent of its business before seeking a declaration of its actively contested legal rights finds no support in Article III."). That is simply not the situation the School Board finds itself in.

The School Board does not face a sufficiently immediate threat of litigation from the Employee Defendants. In their letters to the School Board, the Employee Defendants simply notified the School Board that they wanted to "quit the [u]nion" or otherwise "no longer wished to pay [u]nion dues" following the Supreme Court's *Janus* decision. (Compl. ¶¶ 15–17.) Such requests can hardly be categorized as the precursors to a "definite and concrete" dispute, and the

11

School Board has failed to put forth any evidence to suggest otherwise. *See Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 240, 57 S. Ct. 461, 81 L. Ed. 617 (1937).

In fact, it is difficult to see how the School Board is any differently situated than any other employer who, following a paradigm-altering Supreme Court decision, fears it may be vulnerable to potential litigation. *Janus* only addressed the constitutionality of agency fees and "other payment[s] to the union … deducted from … nonmember[s'] wages…." *Janus*, 138 S. Ct. at 2486. It said nothing about collecting union dues from members. *See Cooley v. Cal. Statewide Law Enf't Ass'n*, No. 2:18-cv-02961-JAM-AC, 2019 WL 331170, at *2 (E.D. Cal. Jan. 25, 2019) ("[T]he relationship between unions and their voluntary members was not at issue in *Janus*."); *see also Allen v. Ohio Civil Serv. Emp. Ass'n AFSCME, Local 11*, No. 2:19-cv-3709, 2020 WL 1322051, at *9 (S.D. Ohio Mar. 20, 2020) ("Even assuming that *Janus's* change in the constitutional landscape gave rise to a newly recognized right that was relevant to [p]laintiffs' circumstances, that does not mean that [p]laintiffs can use that new right to renege on the terms of the [union membership] contract that they signed."); *Campos v. Fresno Deputy Sheriff's Ass'n*, No. 1:18-CV-1660 AWI EPG, 2020 WL 949915, at *7 (E.D. Cal. Feb. 27, 2020) ("*Janus* does not speak to the ability or right of a union member, who voluntarily elected union membership, to unilaterally drop his membership despite [contractual] limitations on the right to resign from the union. The Court is aware of no cases that have held that *Janus* permits union members to unilaterally and at any time drop their memberships and/or stop paying their agreed upon dues.") (internal citations omitted); *Loescher v. Minn. Teamsters Public & Law Enf't Emps. Union, Local No. 320*, No. 19-cv-1333 (WMW/BRT), 2020 WL 912785, at *7 (D. Minn. Feb. 26, 2020) ("Nothing in *Janus* suggests that its holding, which expressly pertains to union-related deductions from 'a nonmember's wages,' should apply to similar collections from a *union member's* wages.")

12

(emphasis in original); *Quirarte v. United Domestic Workers AFSCME Local 3930*, No. 19-CV-1287-CAB-KSC, 2020 WL 619574, at *6 (S.D. Cal. Feb. 10, 2020) (appeal pending) (recognizing that the relationship between unions and their members was not at issue in *Janus*); *Hernandez v. AFSCME Cal.*, No. 2:18-CV-02419 WBS EFB, 2019 WL 7038389, at *6 (E.D. Cal. Dec. 20, 2019) (appeal pending) (holding that deducting union dues does not violate a union member's "First Amendment right not to be compelled to speak"); *O'Callaghan v. Regents of Univ. of Cal.*, No. CV 19-2289 JVS (DFMx), 2019 WL 6330686, at *4 (C.D. Cal. Sept. 30, 2019) ("*Janus* does not require state employers to cease deductions for employees who had voluntarily entered into contracts to become dues-paying union members.") (internal quotation marks omitted). Yet the School Board asks this Court for a declaratory judgement seeking a determination as to whether *Janus* exposes it to the "possibility of [a law]suit…." (Opp'n at 155.) The School Board's fear of a potential § 1983 lawsuit is speculative at best, and is not sufficient to confer standing. True, the School Board decided to "halt[] the deduction of the [Employee Defendants'] union dues and fees[]" (Compl. ¶ 22) allegedly in violation of the CBA, but this potential breach of contract claim does not give rise to federal jurisdiction and is, in fact, scheduled for arbitration.[7] (*See id.* ¶ 23.) Though captioned as a declaratory judgment action, it is clear that what the School Board wants is to "explore the boundaries of the First Amendment rights discussed in *Janus*." (Compl. ¶ 14.) But "[a]s is well known the federal courts established pursuant to Article III of the Constitution do not render advisory opinions. For adjudication of constitutional issues concrete legal issues, presented in actual cases, not abstractions are requisite. This is true of declaratory judgments as any other

---

[7] At the time the complaint was filed, the parties' CBA dispute was "scheduled for arbitration…." (Compl. ¶ 23.) On November 15, 2019, however, the parties notified the Court that they agreed to stay the arbitration pending resolution of the current action. (*See* Doc. Nos. 16, 16-1.)

field." *United Pub. Workers of Am. (C.I.O.) v. Mitchell*, 330 U.S. 75, 89, 67 S. Ct. 556, 91 L. Ed. 754 (1947) (internal citations and quotation marks omitted). Currently, the only controversy between OAPSE and the School Board is for breach of the CBA and such a dispute does not confer federal jurisdiction. As for the "possibility of suit by the [Employee Defendants]" (Opp'n at 155) against the School Board, such a suit is purely conjectural and is not sufficiently concrete to confer federal jurisdiction.   Therefore, the School Board's complaint will be dismissed against all defendants because it fails to allege a substantial controversy to confer Article III standing.[8]

### C.   The School Board's Claims are not Ripe

Even assuming, *arguendo*, that the School Board had standing, which they do not, the potential harm the School Board seeks to avoid—a hypothetical § 1983 suit brought by the Employee Defendants—is not ripe for adjudication. Though standing and ripeness are considered two separate doctrines, they often involve an overlapping inquiry—whether a cognizable injury has occurred. *Kardules v. City of Columbus*, 95 F.3d 1335, 1343 (6th Cir. 1996). "The question whether an alleged injury is sufficient to meet the constitutional 'case or controversy' requirement is at the heart of both doctrines." *Id.* The ripeness issue "is designed to prevent the courts from, through premature adjudication, 'entangling themselves in abstract disagreements.'" *Grace Cmty. Church v. Lenox Twp.*, 544 F.3d 609, 615 (6th Cir. 2008) (quoting *Insomnia, Inc. v. City of Memphis*, 278 F. App'x. 609, 612 (6th Cir. 2008)).

A plaintiff's claim "is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300, 118 S. Ct. 1257, 140 L. Ed. 2d 406 (1998) (internal quotation marks omitted). A court's

---

[8] Because this Court does not have subject matter jurisdiction to reach the merits of this case, OAPSE's motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is moot.

prohibition from adjudicating premature cases "comes both from the case or controversy requirement of Article III and from prudential considerations." *Jackson v. City of Cleveland*, 925 F.3d 793, 807 (6th Cir. 2019) (citation omitted). "In determining whether a claim is ripe for review, courts consider three factors: '(1) the likelihood that the harm alleged by [the] plaintiffs will ever come to pass; (2) whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims; and (3) the hardship to the parties if judicial relief is denied at [this] stage in the proceedings.'" *Insomnia, Inc.*, 278 F. App'x at 612 (alteration in original) (quoting *Warshak v. United States*, 490 F.3d 455, 467 (6th Cir. 2007) (opinion vacated on other grounds)).

In their briefing, both parties focus their ripeness arguments on the School Board's alleged CBA breach and the fact that the contract dispute is subject to arbitration. (Mot. at 139, "[t]he dispute over the [School Board's] breach of section 403 of the CBA is teed up for arbitral review"; Opp'n at 157, "the arbitrator can only decide the contractual issue"). But, as noted above, the alleged contract breach does not confer federal jurisdiction. As the School Board makes clear, federal jurisdiction is premised "not [on] OAPSE's breach-of-contract claim" but on a potential "action [brought by the Employee Defendants] under 42 U.S.C. § 1983…." (Opp'n at 154.) And it is this hypothetical action that is premature.

The first ripeness factor—the likelihood that the Employee Defendants will file a § 1983 against the School Board—cautions against a ripeness finding. To date, the Employee Defendants have suffered no financial[9] harm. After the Employee Defendants' requested to withdraw from

---

[9] To the extent the Employee Defendants were to allege, at some future time, that OAPSE's refusal to recognize their revocation attempts violated their First Amendment rights (a view that numerous federal courts have struck down), such freedom-of-speech-related harm would not involve the School Board.

15

OAPSE and notified the School Board that they no longer wished to pay union dues, the School Board obliged and "halted the deduction of [their] union dues and fees." (Compl. ¶¶ 15, 16, 17, 22.) And the Board is not currently deducting any union-related dues. (School Board Response at 312.) Whether the School Board resumes union dues deductions in the future, and whether the Employee Defendants decide to file suit against the School Board because of those deductions, is entirely hypothetical at this juncture. *See Warshak*, 490 F.3d at 467 ("[T]he first ripeness factor— the likelihood that alleged harm will ever come to pass—is quite similar to the standing requirement of an imminent threatened injury.") But it is certain that the Employee Defendants could not presently bring such a suit.

Though the Supreme Court has expressed concern over "the continuing vitality" of the final two factors—hardship to the parties and fitness of the dispute for resolution—*Kiser v. Reitz*, 765 F.3d 601, 606–07 (6th Cir. 2014) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167, 134 S. Ct. 2334, 189 L. Ed. 2d 246 (2014)), the Court finds these two factors (to the extent they are still pertinent) also disfavor finding this case ripe. This is not a case where a party faces a "bet the farm" conundrum if the Court fails to provide the requested relief. *See MedImmune, Inc.*, 549 U.S. at 134. It is entirely possible that the pending arbitration will clarify, and resolve, the parties' issues.[10] If not, the CBA provides an indemnity provision wherein OAPSE will "indemnify the [School Board] … against any and all claims, demands, suits, or other forms of liability including legal fees and expenses, that may arise out of" the School Board's deduction of union

---

[10] The School Board's argument that the arbitrator has "no authority to determine whether the language of the CBA violates … the *Janus* ruling[,]" (Compl. ¶ 24) is unavailing. The School Board's allegation that "the arbitrator would likely find a contract violation" is pure speculation. Even assuming the arbitrator does find in OAPSE's favor, there are established mechanisms through which the School Board could challenge any hypothetical arbitral award. And even then, it is not at all certain that the Employee Defendants would then bring a lawsuit against the School Board.

dues from union members' wages. (Doc. No. 1-1 at 16.) As such, the Court finds that this case is not ripe for adjudication.

## IV.    CONCLUSION

For the reasons set forth above, OAPSE's motion to dismiss for lack of subject matter jurisdiction (Doc. No. 11) is GRANTED, and the School Board's motion to interplead funds pursuant to Rule 22 (Doc. No. 17) is DENIED as moot. This case is closed.

**IT IS SO ORDERED**.

Dated: April 21, 2020

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

17